UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>Nicole KAPULE,<br><br>                                  Defendant. | Case No.: 21-CR-00505-CAB<br><br>**ORDER DENYING MOTION TO SET CONDITIONS OF RELEASE AND REVOKE DETENTION ORDER** |

On December 8, 2020, the Court detained Defendant Nicole Kapule based on serious risk of flight. (*See* ECF Nos. 24, 26.) At the hearing, the Defendant was subject to a rebuttable presumption of detention. The Defendant has filed a Motion for Reconsideration of the detention order (ECF No. 39), and the Government has filed a Response in Opposition (ECF No. 42).

The Court is cognizant of the Bail Reform Act and its requirement to consider certain factors listed in 18 U.S.C. § 3142(g) in determining whether to detain or release a defendant on bail. These factors were fully considered by the Court during Defendant's detention hearing. The Court can reconsider its decision of detention if prior to trial, the Court finds that information exists that was not known to the movant at the time of the hearing and has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community. 18 U.S.C. § 3142(f)(2). At the hearing, the Court told the Defendant that he was willing to

1

consider any new information that she was proposing. However, the Court told the Defendant that the main reason he was detaining her was because she keeps on committing crimes.

In her Motion to Reconsider the Detention Order, the Defendant goes through the 3142(g) factors (*See* ECF No. 39 at 3–8), which the Court already considered and the Defendant did not appeal to the District Court. As such, for her Motion, the Court will consider solely information the Defendant proffers that did not exist at the time of the detention hearing.

At the hearing, the Defendant indicated that her girlfriend, Brittny Gasca, had posted a $50,000 corporate surety bond for the Defendant's release in the state case where the same charges were initially brought before the case was transferred to this Court.[1] Defendant further proffered that the state bond is unavailable due to the fact that the majority of those funds have already been used for the state case.[2] Based on this, Defendant asked the Court to impose a $20,000 cash or corporate surety bond. Given her extensive criminal history outlined in the Pretrial Service report, which the Court adopted, the Court found that the proposed amount was insufficient. However, the Court indicated that it would consider a higher bond with a *Nebbia* hearing. The Defendant then inquired whether the Court would consider a real property bond, which the Court indicated it would.

In her Motion to Reconsider, the Defendant now recommends a $30,000 personal surety bond signed by Mercedes Kapule (Ms. Kapule's cousin) and Kris Kapule (Ms. Kapule's mother), with a $5,000 a cash component. (*See* ECF No. 39 at 8–9.) Defendant proffers the financial resources of her two proposed sureties. (*Id.*)

---

[1] In her Motion, the Defendant indicates that the amount of the bond was $55,000 through All Pro Bail Bonds.

[2] However, the Defendant, neither at the hearing nor in her Motion, does not explain what funds were available for use in the state case since in the Court's experience a corporate surety bond has to be secured.

The Government correctly points out, in its Response, that pursuant to 18, U.S.C., § 3142(c)(1)(B)(xii), the Court may include as a condition of release, that the defendant:

> Execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond.

(ECF No. 42 at 9–10.) Based on this provision, besides otherwise objecting to Defendant's Motion, the Government argues that the suggested sureties: "(1) have not provided the Court with information regarding the value of assets and liabilities; (2) do not appear to have a net worth of sufficient unencumbered value to pay the amount of the bond; and (3) have not demonstrated by affidavit that their assets are adequate to pay any bond." (*Id.* at 11.)

The Court's review of the financial information proffered by the Defendant as to each surety supports the Government's argument that each surety does not qualify financially to meet a $30,000 bond. Notwithstanding, the Court indicated at the detention hearing that it would be inclined to consider a high bond, to which the Defendant inquired as to whether real property would be considered. However, in her Motion, the Defendant does not propose a high bond, such as the $55,000 bond she posted stateside. Nor does the Defendant propose either a high bond secured by property or a cash or corporate surety bond.

///
///
///

Given the Defendant's proposed amount of the bond, and the apparent lack of net worth of the two proposed sureties, the Court DECLINES to revoke its detention order. In the Court's view, the Defendant remains a serious risk of flight. Defendant's proposal is inadequate to reasonably assure her appearance and the safety of the community. *See* 18 U.S.C. § 3142(f)(2).

**IT IS SO ORDERED.**

Dated:  March 16, 2021

BERNARD G SKOMAL
U.S. Magistrate Judge